## PEOPLE *v.* DANIELS.

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—CONFESSION.

   Confession of defendant to crime of robbery armed, obtained from him without his court-appointed counsel being present although the assistant prosecuting attorney knew defendant had counsel, *held,* not illegal and involuntary, where defendant solicited the statement and did not request that his attorney be present (CLS 1961, § 750.529).

2. SAME—VOLUNTARY CONFESSION—PLEA OF GUILTY.

   Claim that plea of guilty was based upon an illegal and involuntary confession to crime of robbery armed failed, where trial court's finding on remand to determine voluntariness of confession that it had been made voluntarily is supported by the record (CLS 1961, § 750.529).

3. SAME—PLEA OF GUILTY—NEW TRIAL—NERVOUSNESS.

   Sentence of 10 to 25 years for armed robbery may not be vacated, plea of guilty withdrawn, and new trial granted merely because defendant, at the time he pleaded guilty, was nervous and tense (CLS 1961, § 750.529).

4. SAME—PLEA OF GUILTY—INTERROGATION OF DEFENDANT.

   Interrogation of defendant under oath after he had indicated he would plead guilty, required by court rule to ascertain

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 503.
   Admissibility of confession, admission, or incriminatory statement of accused as affected by fact that it was made after indictment and in the absence of counsel. 90 ALR2d 732.
[2] 20 Am Jur, Evidence §§ 482, 537; 21 Am Jur 2d, Criminal Law §§ 485, 486.
[3] 21 Am Jur 2d, Criminal Law §§ 569, 571.
[4] 21 Am Jur 2d, Criminal Law §§ 485–487.
[5] 21 Am Jur 2d, Criminal Law §§ 569, 571.
[6] 5 Am Jur 2d, Appeal and Error § 976; 21 Am Jur 2d, Criminal Law §§ 533, 572.

whether such plea was being made freely, understandingly, voluntarily, and without undue influence, compulsion, duress, or promise of leniency *held,* not to have effected a violation of the constitutional prohibition against compelling a person charged with crime to be a witness against himself (Const 1963, art 1, § 17; GCR 1963, 785.382).

5. SAME—SENTENCE.
   Fact that defendant-appellant who pleaded guilty to armed robbery received sentence of 10 to 25 years, whereas another defendant charged with the same crime in the same county received a sentence of 2 to 10 years would not entitle appellant to have sentence set aside, where the sentence imposed upon him is within maximum term provided by statute (CLS 1961, § 750.529).

6. SAME—SENTENCE—COURT OF APPEALS.
   The Court of Appeals does not have supervisory control over punishment imposed by trial court within statute.

Appeal from Berrien; Zick (Karl F.), J. Submitted Division 3 October 5, 1965, at Grand Rapids. (Docket No. 587.) Decided March 9, 1966. Leave to appeal denied by Supreme Court June 30, 1966. See 378 Mich 721.

J. B. Daniels was convicted, on his plea of guilty, of armed robbery. Defendant appeals. Remanded October 14, 1965, to determine if defendant's confession was voluntary. Confession found voluntary and cause returned to Court of Appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John T. Hammond,* Prosecuting Attorney, and *Harry J. Creagar,* Assistant Prosecuting Attorney, for the people.

*White, Klute & White* (*Donald P. Stone,* of counsel), for defendant.

HOLBROOK, J. This is an appeal from a denial by the trial court of a motion for leave to file motion

to vacate sentence, withdraw plea, and for a new trial.

Defendant-appellant was convicted upon a plea of guilty of armed robbery,[1] with court-appointed counsel present, in the circuit court for Berrien county, September 14, 1964. He was sentenced October 16, 1964, to 10 to 25 years.

Appellant asserts in his brief on appeal that his plea of guilty was not voluntary. One of the reasons for such claim appears in his motion presented to the circuit court, *i.e.,* that he signed a confession without his attorney being present and without being advised of his rights or the consequences of such action, and that in the course of interrogation, he had been told that if he pleaded guilty, he would receive a lighter sentence. This, in effect, constituted a claim that his plea of guilty was based upon a confession illegally obtained.

Confronted with an issue upon which there was no evidence or record to review, this Court ordered a *Walker* hearing (*People* v. *Walker* [1965], 374 Mich 331) October 14, 1965, and remanded the matter to the trial court to take testimony "of the facts and circumstances under which the confession was obtained and the plea of guilty made." The order contained proper provisions for the protection of the rights of defendant in the event he testified.

A transcript of the hearing has been received by this Court, and indicates that the defendant and witnesses for the people testified concerning the interrogation and circumstances surrounding the confession. The defendant's testimony is in direct conflict with the people's witnesses as to the facts of the matter.

[1] See CLS 1961, § 750.529 (Stat Ann 1963 Cum Supp § 28.797).

The trial judge in his decision on the hearing rejected the claims of defendant and ruled on the basis of the record that the alleged confession was voluntary and the plea of guilty was freely, voluntarily, and understandingly made.

The following is a part of the trial judge's determination:

"There is one aspect of the case that the court does not like, and that is the fact that the record shows that a statement or confession of Daniels was taken with his attorney not being present and the assistant prosecuting attorney knowing that he had an attorney. However, the evidence is overwhelming to the effect that Mr. Daniels solicited this statement."

It also appears that the confession or statement was taken some weeks subsequent to the time when defendant's counsel was appointed and after defendant had conferred with his counsel. The record does not indicate any request by defendant for his attorney to be present at the time in question.

A similar question was presented in the case of *People* v. *Donald D. Williams* (1965), 2 Mich App 91, 94, wherein we stated:

"As to the second basis for objection raised by the appellant's counsel, it should be emphasized that this is not a case where the defendant was questioned for several days and was refused the services of an attorney as in the case of *People* v. *Hamilton* (1960), 359 Mich 410, or where a defendant has requested his attorney be present before or during interrogation as in *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977). The interrogation in the instant case occurred after defendant had conferred with his counsel. In fact, during oral arguments before this Court, it was indicated that it was the defendant himself who sought this interview."

The claim of appellant that the plea of guilty was based upon an illegal and involuntary confession must fail by reason of the ruling of the trial judge and justified by the record.

Appellant further asserts that he entered his plea of guilty because he was upset, tense, mentally and physically disturbed, and that he did not fully comprehend the effect of his plea of guilty, and refers this Court to two of his answers as appear in the transcript of the arraignment. We relate herein such record with the answers referred to by appellant in italics as follows:

(Examination by the court)

"*Q.* Mr. Daniels, you have indicated to the court that you want to plead guilty to this charge of armed robbery.

"*A.* Yes, sir, I do.

"*Q.* For which there is a maximum penalty of life imprisonment, and you understand that?

"*A.* Yes, sir, I do.

"*Q.* I want to ask you a few questions. The information charges you committed this offense on July 20, 1964, at the township of Sodus.

"*A.* Yes, sir.

"*Q.* And it charges that with force and arms you did upon one Henry Krause make an assault and $244.62 in money of the property of Rex Shingledecker from the person of said Henry Krause and against the will of the said Henry Krause then and there feloniously and by force and violence did rob, steal, take and carry away, he the said J. B. Daniels at the time of committing the said assault and robbery aforesaid being then and there armed with a dangerous weapon, to-wit, a revolver. That is what you're charged with.

"*A. I don't understand that assault.*

"*Q.* That means any offer of violence. If I said, 'I'll hit you' that would be an assault. If I just

raised my hand and said I would hit you, that would
be.

"*A. No, sir, I didn't do that.*

"*Q.* Did you have a gun?

"*A.* No, sir, I didn't. There was a gun like I
stated, but I didn't have a gun.

"*Q.* Were you with some others?

"*A.* Yes, sir.

"*Q.* Did you know what was going on?

"*A.* Yes, sir, I did.

"*Q.* What was your part in the offense?

"*A.* I was there.

"*Q.* Were you driving the car?

"*A.* It was my car, yes, sir.

"*Q.* Were you driving?

"*A.* Yes, sir, I was.

"*Q.* Was this thing planned?

"*A.* Yes, sir.

"*Q.* But you didn't get out of the car?

"*A.* I was in the station, yes, sir.

"*Q.* Was this a gasoline station?

"*A.* Yes, sir.

"*Q.* All of you went in?

"*A.* Two.

"*Q.* You and another fellow?

"*A.* Yes, sir.

"*Q.* You knew that the other fellow had the gun?

"*A.* Yes, sir.

"*Q.* And he pulled the gun?

"*A.* I was driving. He got out and walked in and
stated, 'It's a hold up.'

"*Q.* But the point is that you knew when the car
was stopped at the gasoline station—and you said
you were driving—you knew that the plan was to
rob the place?

"*A.* Yes, sir.

"*Q.* And you even walked in with him?

"*A.* Yes, sir.

"*Q.* Did he get the money or did you get some of
the money?

"*A.* I didn't get any of the money.

"*Q.* He took the money?

"*A.* Yes, sir.

"*Q.* But he did pull the gun.

"*A.* We went in there, but I didn't see when he pulled the gun; but he must have shown it for the guy to give him the money.

"*Q.* Anyway, you knew he had a gun.

"*A.* Yes, sir, I knew that.

"*Q.* But you didn't actually see him pull the gun.

"*A.* I didn't actually see him pull the gun.

"*Q.* Isn't it a fair statement—in that event anyone that aids abets or participates or procures, or anybody that is involved in an offense with another person, if he knew what was going on, they would be as guilty as the other person. Do you get that point?[2]

"*A.* Yes, sir, I do.

"*Q.* That is the basis you want to plead guilty?

"*A.* Yes, sir, I do.

"*Q.* And you have gone over this with your lawyer?

"*A.* Yes, sir, I have."

This questioning of defendant by the court took place after the plea of guilty had been offered and in reviewing the record but one conclusion comes to mind; *viz.,* that defendant was cognizant of the effect of his plea of guilty and that his claim of being upset and tense, mentally and physically disturbed, was not reflected in his reasonable and common sense answers. That he may have been nervous and tense under the circumstances can be accepted without challenge, however, we know of no precedent or authority for such a condition to be used by a defendant in a criminal case for the purpose of withdrawing his plea of guilty, having his sentence vacated, and being granted a new trial.

Defendant-appellant further claims that his constitutional rights were violated by the trial judge's

---

[2] For abolition of distinction between accessory and principal, see CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979).

failure to inform him of his constitutional right to remain silent during the arraignment and cites Const 1963, art 1, § 17:

"No person shall be compelled in any criminal case to be a witness against himself"

and, United States Const, Am 5. The questioning that defendant refers to in the arraignment was after he had stated to the court that he desired to plead guilty. Defendant was thereupon sworn without objection by himself or his attorney and answered the questions of the court. The procedure after an offering of a plea of guilty in the criminal courts of our State is set forth in the court rules. GCR 1963, 785.3(2):

"Imposing sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequences of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty, and imposing sentence *shall* ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted." (Emphasis supplied.)

The fact that defendant had already offered to plead guilty when the questioning took place precludes any application of the constitutional prohibition against the defendant being compelled to testify against himself. The issue of guilt as to the questioning was eliminated by defendant when he offered his plea of guilty. The questioning took place as required by law to assure that the plea was freely, understandingly, and voluntarily made. This pro-

cedure was necessary in order to comply with the requirements of due process. If the plea was rejected the issue of guilt would then have to be tried and the accused could not be compelled to be a witness against himself on that issue. See CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058). *People* v. *Coates* (1953), 337 Mich 56, certiorari denied, 346 US 840 (74 S Ct 64, 98 L ed 361).

Finally, defendant-appellant asserts that the trial court should have granted his motion because he received a sentence of 10 to 25 years whereas another defendant charged with the same crime in the same county, but from another judge, received a sentence of 2 to 10 years. Appellant cites *People* v. *Rucker* (1931), 254 Mich 342, wherein the Supreme Court allowed the defendant therein to withdraw his plea of guilty after sentence and to change his plea to not guilty and ordered a new trial. However, the facts in that case are not analogous to the case at hand. Defendant therein sought to withdraw his plea of guilty before sentence and was refused by the trial court. Further, it appeared from the trial of defendant's companions who were all acquitted, that defendant was probably not guilty. The two cases are easily distinguished.

In *People* v. *Pate* (1965), 2 Mich App 66, on p 68, we stated:

"When a sentence is within the maximum provided by statute, the trial court has wide discretion and an appellate court does not have supervisory control over the punishment. See *Cummins* v. *People* (1879), 42 Mich 142; *People* v. *Kelly* (1894), 99 Mich 82; *People* v. *Guillett* (1955), 342 Mich 1."

The trial judge did not abuse his discretion in refusing to set aside the sentence for this reason.

Other claimed errors do not merit discussion.

The order denying defendant-appellant's motion by the trial court is affirmed.

Burns, P. J., and T. G. Kavanagh, J., concurred.